**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

MACEO TROY STREATER, JR.,

*Plaintiff*,

v.

WEST HAVEN POLICE DEPT., OFFICER SCOTT ALLARD, OFFICER BUERETTA, OFFICER PARIS, OFFICER ZDRU, and, ASSISTANT ATTORNEY RONAN,

*Defendants*.

No. 3:19-cv-465 (MPS)

**RULING ON MOTIONS FOR SUMMARY JUDGMENT**

Maceo Streater brought this lawsuit against the West Haven Police Department, four of its officers, and an Assistant State's Attorney, alleging that the officers falsely arrested him after an altercation between him, his cousin, and his cousin's girlfriend. Streater, who is representing himself, claims the officers lacked probable cause to arrest him because, although his cousin's girlfriend told the police on the day of the incident that he had spit at her and assaulted the cousin, he told the police the next day that his cousin was the aggressor. The Defendants have filed a motion for summary judgment, arguing that the police were entitled to decide which version of events to believe when they decided to apply for an arrest warrant and, after a judge issued the warrant, to arrest him. Because the police had probable cause to believe Streater had committed an assault based on the statement received from the cousin's girlfriend and the officers' observation of the cousin's injury, and because Streater's own statement to the police did not negate probable cause, I grant the Defendants' motion and deny Streater's cross-motion for summary judgment.

## I. Facts

The following facts are taken from the Defendants' Local Rule 56(a)1 Statement and from declarations submitted by Streater.[1]

On April 4, 2016, Defendants Berretta,[2] Allard, and Paris, as well as Officer Michael Beutel—all of whom were police officers with the West Haven Police Department—responded to a domestic disturbance call at a home in West Haven. ECF Nos. 175-1 at 1; 175-2 at 1.[3] At the home, the officers spoke with Alesha Hartley, who reported that she had called the police after Streater, her boyfriend's cousin, spat in her face and attacked her boyfriend (Byron Sykes). *Id.* The officers observed that Byron had a "large scratch on his face." *Id.* Hartley told the officers that she, Byron, and Streater all resided at the home with Byron's mother, Cathy Sykes. ECF No. 175-1 at 1. She reported that Streater left the home after the altercation, and Streater was no longer at the home when the officers arrived. ECF Nos. 175-1 at 1; 175-2 at 1. The officers tried to reach Streater but were not able to do so. ECF No. 175-2 at 1. Officer Beutel concluded that

---

[1] Streater filed no response to the Defendants' Local Rule 56(a)1 Statement, which, under the Local Rules of this Court, would warrant the Court's finding all the statements in the Defendants' Statement to be admitted. *See* D. Conn. L. Civ. R. 56(a)1 ("Each material fact set forth in the Local Rule 56(a)1 Statement and supported by the evidence will be deemed admitted … unless such fact is controverted by the Local Rule 56(a)2 Statement required to be filed and served by the opposing party in accordance with this Local Rule …."). Further, Defendants filed a notice warning Streater of the need to respond to the motion for summary judgment with evidence and the need to read Rule 56 of the Federal Rules and Local Rule 56. *See* ECF No. 177. While that notice did not fully comply with the Local Rule because it did not attach a copy of Local Rule 56, the Local Rules are available on the Court's website, and the notice did properly explain the requirements for responding to a motion for summary judgment. In any event, the statements in the Defendant's Local Rule 56(a)1 Statement are supported by the attached police report and declarations, and Streater does not appear to contest them. I therefore accept them as undisputed for purposes of this ruling. Streater has submitted two declarations – one reportedly from his aunt, ECF No. 181 at 4, for which some of the blanks in the form are incomplete but which I will treat as her sworn declaration, and the second a declaration by him submitted "on behalf of" his aunt, ECF No. 179 at 3-4. Both of these documents explain how he went to the police station the day after the altercation to provide his version of events. I will treat these declarations as his evidentiary submissions and accept them as undisputed for purposes of this ruling.

[2] While Streater names an Officer "Beuretta" in his complaint, the police report (ECF No. 175-1) indicates that "Berretta" is the correct spelling.

[3] No record evidence suggests that Officer Zdru responded to the domestic disturbance call or was otherwise involved in Streater's arrest.

there was probable cause to arrest Streater based on Hartley's report, his observation of the scratch on Byron's face, and Streater's "unknown whereabouts." *Id.* He applied for and obtained an arrest warrant. *Id.*

According to the declarations submitted by Streater, he and his aunt (Cathy) went to the police department the next day. ECF No. 179 at 3. After they waited for twenty minutes, a female police officer, who the defendants suggest may have been Paris (ECF No. 175 at 10), came out to speak with them; the officer told Streater that the police had "heard that [he] got in to a fight with [his] cousin or [his cousin's] girlfriend." *Id.*; *see also* ECF No. 181 at 4. While Streater initially responded that he had not been in a fight with anybody, he then acknowledged that there had been an altercation and, specifically, that "he got into an argument with his cousin." *Id.* He told that officer, who asked "what [had] happened to [his] face," that Byron had punched him but that he did not want to press charges. *Id.* Streater then asked whether the officer was going to arrest him. *Id.* She told him that she was not, and that she would "make sure the other officers get your statements." ECF No. 181 at 4. Streater said that he would "make sure that nothing like this happen[]s again because [he was] going to move out," and he and Cathy left. *Id.*

On April 7, 2016, Streater went to the West Haven Police Department to ask whether a warrant had been issued for his arrest. ECF No. 175-1 at 5. Officer Allard ran a NCIC check, which confirmed that a warrant had been issued, and then arrested Streater. *Id.*

## II. Legal Standard

Summary judgment is appropriate only when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material when it might affect the outcome of the suit under

governing law," and "an issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (internal citations and quotation marks omitted). The moving party bears the burden "of showing that no genuine factual dispute exists . . ., and in assessing the record to determine whether there is a genuine issue as to any material fact, the court is required to resolve all ambiguities and draw all factual inferences" in favor of the non-moving party. *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 202 (2d Cir. 1995). Pro se litigants are afforded special solicitude to demonstrate a valid claim. *See Ruotolo v. I.R.S.*, 28 F.3d 6, 8 (2d Cir. 1994) (district court should afford pro se litigants "special solicitude before granting the [defendant's] motion for summary judgment"). Nonetheless, "[p]roceeding *pro se* does not otherwise relieve a litigant of the usual requirements of summary judgment, and a *pro se* party's bald assertions, unsupported by evidence, are insufficient to overcome a motion for summary judgment." *Edmond v. Hartford Ins. Co.*, No. 3:98 CV 1653(CFD), 2008 WL 616092, at *3 (D. Conn. Mar. 3, 2008) (citations omitted), *aff'd*, 344 F. App'x 688 (2d Cir. 2009).

## III. Discussion

In the operative complaint, Streater labels his claim "unlawful[] and false arrest," ECF No. 160 at 1, and his allegations confirm that his claim is one for false arrest, i.e., arrest without probable cause. *See, e.g., id*. ("Officer Allard violated my fourth amendment right[s] when he decided to arrest and seized me without any real objective [sic] to believe it was reasonable that I had committed a crime by defending myself from vi[]c[i]ous attacks by my cousin or his girlfriend ….").[4]

---

[4] His complaint also cites a federal and two state statutes – 18 U.S.C. Sec. 242, Conn. Gen. Stat. Sec. 46b-38b, and Conn. Gen. Stat. Sec. 53-39 –, none of which creates a private cause of action. The Second Circuit has made clear that 18 U.S.C. Sec. 242 creates no private cause of action. *Robinson v. Overseas Mil. Sales Corp.*, 21 F.3d 502, 511

The Second Circuit has held that a claim for false arrest asserted under § 1983 "to vindicate the Fourth and Fourteenth Amendment right to be free from unreasonable seizures, [is] 'substantially the same' as [a] claim[ ] for false arrest ... under state law." *Jocks v. Tavernier*, 316 F.3d 128, 134 (2d Cir. 2003) (citations omitted). To state a false arrest claim under section 1983 in Connecticut, a plaintiff must not only plead facts to satisfy the elements of a false arrest under Connecticut law but must also plead facts to demonstrate "an unreasonable deprivation of liberty in violation of the Fourth Amendment." *Walker v. Sankhi*, 494 F. App'x 140, 142 (2d Cir. 2012) (summary order). Under Connecticut law, "[f]alse imprisonment, or false arrest, is the unlawful restraint by one person of the physical liberty of another." *Pizarro v. Kasperzyk*, 596 F. Supp. 2d 314, 318 (D. Conn. 2009) (quoting *Green v. Donroe*, 186 Conn. 265, 267 (1982)).

"'The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under state law or under [Section] 1983.'" *Cuadrado v. Bristol Police Dep't.*, No. CV145015961, 2015 WL 2458187, at * 2 (Conn. Super., J.D. New Britain, Apr. 28, 2015)(quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1966)). Generally, probable cause to arrest exists when the officer has "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Walczyk v. Rio*, 496 F.3d 139, 156 (2d Cir. 2007) (citations omitted).

---

(upholding dismissal of claim under 18 U.S.C. § 242 because it is a "criminal statute[] that do[es] not provide [a] private cause[] of action."). Section 46b-38b contains no language creating a private cause of action and some language that forecloses liability where, as I find in this case, an arrest is supported by probable cause. Conn. Gen. Stat. Sec. 46b-38b(e)("No peace officer shall be held liable in any civil action regarding personal injury or injury to property brought by any party to a family violence incident for (1) an arrest based on probable cause …."). Conn. Gen. Stat. Sec. 53-39 is a criminal statute imposing penalties for "malicious prosecution" and contains no language suggesting legislative intent to create a private cause of action. In any event, Connecticut common law, which does recognize a claim in tort for malicious prosecution, makes clear that the existence of probable cause defeats such a claim. *Falls Church Grp., Ltd. v. Tyler, Cooper and Alcorn, LLP*, 281 Conn. 84, 94 (2007)("the existence of probable cause is an absolute protection against an action for malicious prosecution" (internal quotation marks and alteration omitted)).

Streater was arrested on the basis of a warrant. "Ordinarily, an arrest ... pursuant to a warrant issued by a neutral magistrate is presumed reasonable because such warrants may issue only upon a showing of probable cause." *Walczyk,* 496 F.3d at 155–56. Streater contends, however, that the officers who applied for the warrant failed to inform the issuing judge about the version of events he provided when he visited the police station the day after the incident. ECF No. 179 at 1. Faced with a claim that the police omitted material information from, or provided false information in, a warrant application, "courts consider whether the allegedly false or omitted information was necessary to the issuing judge's probable cause determination. This is done by hypothesizing a 'corrected affidavit' – an affidavit that has been corrected to rectify any false statements and . . . include[] any omitted information –to determine if the affidavit as corrected would suffice to establish probable cause." *Coderre v. City of Wallingford*, No. 3:08-cv-00959(JAM), 2015 WL 4774391, at *4 (D. Conn. Aug. 13, 2015). Here, however, Streater has submitted no evidence to support his claim that the officers omitted his version of events, or otherwise provided false information to the issuing judge, and neither he nor the defendants have submitted the affidavit supporting the warrant application. So I cannot perform a "corrected affidavit" analysis. For purposes of this ruling, I will make no presumption that the arrest was supported by probable cause simply because a warrant was issued but will, instead, consider whether the undisputed facts, including Streater's version of events, would have supported a finding of probable cause and, thus, the issuance of the warrant.

Streater argues that probable cause was lacking because his version of events, provided to the officer he saw at the police station the day after the altercation, was true and showed that his cousin was the aggressor in the altercation. ECF No. 173 at 1-4. But Streater does not dispute that his cousin's girlfriend, Hartley, *told* the officers that it was Streater who was the aggressor,

i.e., that he had spit at Hartley and assaulted the cousin; and he does not dispute that the officers who visited his aunt's house on April 4, 2016, observed what they believed was a scratch on his cousin's face, although he argues that this "scratch" was due to a skin condition his cousin had. While Streater's submissions make clear that he feels strongly that it was his cousin and the cousin's girlfriend who were at fault and that he was simply defending himself, his strong feeling does not create a dispute of fact that would warrant a trial on his false arrest claim. *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 570 (2d Cir. 1996)("[P]robable cause for an arrest must be determined on the basis of the information reasonably available to the arresting officer at the time of the arrest, not on the basis of what the arrested party believed to be happening."). Further, the law governing arrests allows police officers to credit one witness's version of events over another's, as long as there is a reasonable basis to do so. *Ricciuti v. N.Y.C. Transit Authority*, 124 F.3d 123, 128 (2d Cir. 1997)(upholding finding of qualified immunity on false arrest claim where officer credited injured witness's assault allegations instead of plaintiff's statement that witness had initiated the fight: "Although Officer Lopez would have been entitled to believe [the plaintiff's] version of events rather than [the witness's], he was not required to do so. Given [the witness's] version of events and his visible injuries, a competent police officer could believe it was objectively reasonable to arrest plaintiff for the assault that had been committed. The officer was not required to make a full investigation into plaintiff's state of mind prior to taking action. Once a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest."); *Curley v. Village of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001)("When information is received from a putative victim or an eyewitness, probable cause exists, unless the circumstances raise doubt as to the person's veracity."); *Coyle v. Coyle*, 302 F.

Supp.2d 3, 8 (E.D.N.Y. 2004)(dismissing false arrest claims where "nothing in the complaint suggest[ed] that the police had reason to believe that [the complainant] was an unreliable witness."); *Cafasso v. Nappe*, No. 3:15-cv-920(MPS), 2017 WL 4167746, at * 7 (D. Conn. Sept. 20, 2017)("[D]uring an investigation into an alleged crime, an arresting officer is not obligated to pursue every lead or engage in extensive fact-finding that may yield evidence beneficial to the accused," and generally "has no duty to investigate exculpatory defenses." (internal quotation marks and citation omitted)).

The officers who arrived at Streater's aunt's home on April 4 were told by Hartley, who had apparently contacted the police to report "a family dispute," ECF No. 175-1 at 1, that Streater had spit in her face and then attacked Byron Sykes. *Id*. She also reported that after the altercation, Streater had "left the scene on foot, in an unknown direction." *Id*. And while still at the home, Officer Beutel observed that Byron Sykes had "a large scratch on his face." This information easily provided the officers with probable cause to arrest Streater for assault. Conn. Gen. Stat. § 53a-61(a) ("A person is guilty of assault in the third degree when: (1) With intent to cause physical injury to another person, he causes such injury to such person or to a third person; or (2) he recklessly causes serious physical injury to another person . . . ."). And Streater's own version of events, provided at the police station the next day to a police officer, did not eliminate probable cause. According to the declarations submitted by Streater, he told the officer that "there was an altercation that night," that "he got into an argument with his cousin," that the injuries on his own face stemmed from the fact that his cousin "punched [him] in the face" but that he did not want to press charges against his cousin. ECF Nos. 179 at 3; 181 at 4. The declarations also state that when asked whether she was going to arrest him, the police officer said she was not but that she would pass along his statement to the other officers. *Id.* First, as

noted above, the police were not required to believe Streater's statement that his cousin was the aggressor. Second, and contrary to Streater's assertions, Streater's declaration does not suggest that he did not assault his cousin; instead, it suggests only that his cousin also assaulted him. And his declaration corroborates that there was an "altercation" stemming from an "argument" between the two men. So, assuming the statement was passed on to the "other officers" and included in the affidavit submitted to the judge, it would not have significantly affected the analysis of whether the officers had probable cause to arrest Streater, except by corroborating part of what they had learned from Hartley, i.e., that there was an argument and "altercation." For that reason, it does not matter whether the statement was in fact passed on to the judge or whether it was, as Mr. Streater asserts without pointing to any evidence, "spoliated." ECF No. 179 at 1.

Even if somehow the officers lacked probable cause, they plainly had "arguable probable cause," which is enough to sustain their defense of qualified immunity. "In the context of a false arrest claim, qualified immunity protects an officer if he had 'arguable probable cause' to arrest the plaintiff." *Myers v. Patterson*, 819 F.3d 625, 632 (2d Cir. 2016)(internal quotation marks and citation omitted). "Arguable probable cause exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004)(internal quotation marks and citation omitted). The facts recounted above—including those regarding Streater's conversation with an officer on April 5—gave the officers "arguable

probable cause" to arrest him, and thus also warrant summary judgment under the doctrine of qualified immunity.[5]

## IV. Conclusion

For the reasons set forth above, the motion for summary judgment filed by Defendants Allard, Zdru, Berretta, Paris, and the West Haven Police Department (ECF No. 171) is GRANTED, the claim against Defendant Ronan is DISMISSED, and Streater's motion for summary judgment (ECF No. 173) is DENIED. The Clerk is directed to close this case.

IT IS SO ORDERED.

/s/

Michael P. Shea, U.S.D.J.

Dated: Hartford, Connecticut
May 27, 2022

[5] As the Court has already explained in its order at ECF No. 155, the West Haven Police Department cannot be sued in a section 1983 action because it is not a "person" within the meaning of the statute. *See Raffone v. Weihe*, No. 3:15-CV-1173(VLB), 2016 WL 2642213, at *3 (D. Conn. May 9, 2016) ("[A] municipal police department is not a 'person' within the meaning of Section 1983."); *Salaman v. Bullock*, No. 3:05-CV-876(JCH)(HBF), 2007 WL 879130, at *2 (D. Conn. Mar. 15, 2007) ("[A] municipal police department [] is not subject to suit under section 1983 because it is not an independent legal entity."). Accordingly, Streater's claim against the Police Department fails. Further, Streater has not sued the town of West Haven—although the defendants suggest that he has. Even if he had, any *Monell* claim would fail for the reasons set forth in the defendants' brief. *See* ECF No. 175 at 11-14. Finally, the Court dismisses Streater's claim against Assistant State's Attorney Ronan. Although Ronan has not appeared in this case, despite being served on September 27, 2021 (*see* ECF No. 167), there is no suggestion that he had anything to do with Streater's arrest. And even if Streater's claim was construed as one for malicious prosecution, it would fail for the same reason that the false arrest claim fails, i.e., there was probable cause.